

# THE ATTORNEY GENERAL

## OF TEXAS

**AUSTIN 11, TEXAS**

GERALD C. MANN
~~NICOLWHISSON~~
ATTORNEY GENERAL

Honorable W. M. Tucker
County Attorney
Collingsworth County
Wellington, Texas

Dear Sir:

Opinion No. O-2376
RE: Liability of county treasurer for
school funds over which treasurer
does not have control - Investment
of school funds.

Your request for opinion has been received and care-
fully considered by this department. We quote from your let-
ter of request as follows:

"Question No. 1. Where County School Superin-
tendent used public school funds for the purchase
of bonds, where said County School funds are handled
independently by the County School Superintendent,
and said funds does not pass through the hands of
the County Treasurer should there be a shortage in
the County Superintendents account or if said bonds
should be worthless, or defective in any manner,
would the County Treasurer, the said Viola Hudson,
be liable under her official bond for any such short-
age, or defects in said bonds so purchased by said
County School Superintendent? Under Art. 1704 R.V.S.

"Question No. 2. Is the County School Superin-
tendent authorized to invest the Public School funds
in bonds, without the sanction of the Commissioners
Court of his County, when said school fund is car-
ried in the School Depository, and handled exclu-
sively by the County School Superintendent independ-
ent of the County treasurer."

We understand from your letter that Collingsworth
County has a duly selected and qualified county depository and
that the school funds are in said depository.

Article 1704, Revised Civil Statutes of Texas, reads
as follows:

"The county treasurer before entering upon

the duties of his office, and within twenty days
after he has received his certificate of election,
shall give a bond payable to the county judge of
his county, to be approved by the commissioners
court, in such sum as such court may deem neces-
sary, conditioned that such treasurer shall faith-
fully execute the duties of his office and pay
over according to law all moneys which shall come
into his hands as county treasurer, and render a
true account thereof to said court at each regu-
lar term of said court."

Article 3942, Revised Civil Statutes of Texas, reads
as follows:

"The treasurers of the several counties shall
be treasurers of the available public free school
fund and also of the permanent county school fund
for their respective counties. The treasurers of
the several counties shall be allowed for receiv-
ing and disbursing the school funds one-half of
one per cent for receiving, and one-half of one
per cent for disbursing, said commissions to be
paid out of the available school fund of the
county; provided, no commissions shall be paid
for receiving the balance transmitted to him by
his predecessor, or for turning over the balance
in his hands to his successor; and provided, that
he shall receive no commissions on money trans-
ferred."

Article 2828, Revised Civil Statutes of Texas, reads
as follows:

"The terms 'county treasurer' and 'county
treasury' as used in all provisions of law relat-
ing to school funds, shall be construed to mean
the county depository. The commissioners court
shall file with the State Department of Education
a copy of the bond of said depository to cover
school funds. No commission shall be paid for
receiving and disbursing school funds."

Article 2829, Revised Civil Statutes of Texas, reads
as follows:

"Within twenty days after the receipt of a
certificate of its selection, the County Deposi-
tory shall execute a good and sufficient bond,
payable to the County Judge, in amount equal to

the probable amount of available School Fund,
which may be on deposit at any one time, and of
the permanent County Fund, to be estimated by
the County Superintendent, and shall be condi-
tioned that the depository will faithfully per-
form its duties under this title, and safely keep
and faithfully disburse the School Fund accord-
ing to Law, and pay such warrants as may be drawn
on said fund by competent authority; provided, in
lieu of said bond, such depository may secure said
School Funds in the same manner as is now provi-
ded by law for qualification as County Depository.

"Sec. 1-A.  In the event depositories have
been selected at the time of adoption of the above
provision, such depositories may, at option, se-
cure said School Fund by approved securities other
than by personal bond."

Article 2549, Revised Civil Statutes of Texas, reads
as follows:

"As soon as said bond be given and approved
by the Commissioners Court, and the Comptroller,
an order shall be made and entered upon the min-
utes of said Court designating such banking corporation,
association or individual banker, as a depository
for the funds of said county until sixty (60) days
after the time fixed for the next selection of a
depository; and thereupon, it shall be the duty of
the county treasurer of said county immediately
upon the making of such order, to transfer to said
depository all the funds belonging to said county,
as well as all funds belonging to any district or
other municipal subdivision thereof not selecting
its own depository, and immediately upon receipt
of any money thereafter, to deposit the same with
said depository to the credit of said county, dis-
trict and municipalities.  It shall also be the
duty of the tax collector of such county to deposit
all taxes collected by him, or under his authority,
for the State and such county and its various districts
and other municipal subdivisions, in such deposi-
tory or depositories, as soon as collected, pend-
ing the preparation of his report of such collec-
tion and settlement thereon.  The bond of such
county depository or depositories shall stand as
security for all such funds.  Upon such funds be-
ing deposited as herein required, the tax collec-
tor and sureties on his bond, shall thereafter be

relieved of responsibility of its safe-keeping.
All county depositories shall collect all checks,
drafts and demands for money so deposited with
them by the county and when using due diligence
shall not be liable on such collections until the
proceeds thereof have been duly received by the
depository bank, provided that any expense incur-
red in collection thereof by the depository, which
the depository is not allowed or permitted to pay
or absorb by reason of any act of Congress of the
United States or any regulation by either the
Board of Governors of the Federal Reserve System
or the Board of Directors of the Federal Deposit
Insurance Corporation, shall be charged to and
paid by the county.  All money collected or held
by any district, county or precinct officer in
such county, or the officer of any defined dis-
trict or subdivision in such county, including the
funds of any municipal or quasi-municipal subdivi-
sion or corporation which has the power to select
its own depository, but has not done so, shall be
governed by this law, and shall be deposited in
accordance with its requirements, and shall be
considered in fixing the bond of such depository,
and shall be protected by such bond; and all war-
rants, checks, and vouchers evidencing such funds
shall be subject to audit and countersignature as
now or hereafter provided by law."

Article 2557, Revised Civil Statutes, reads as fol-
lows:

"The county treasurer shall not be responsible
for any loss of the county funds through the failure
or negligence of any depository; but nothing in this
Act shall release any county treasurer for any loss
resulting from any official misconduct or negligence
on his part, nor from any responsibility for the
funds of the county until a depository shall be
selected and the funds deposited therein, nor for any
misappropriation of such funds by him."

Article 2663, Revised Civil Statutes, reads as fol-
lows:

"On the first of each month, the State Super-
intendent shall prorate to the several counties,
cities and towns and school districts constituting
separate school organizations, according to the
scholastic population of each, the available school

money collected during the preceding month and
then on hand as shown by the certificate issued
that day to him by the Comptroller, and shall
thereupon certify to the Comptroller the total
sum prorated to each; and such certificate shall
be authority for the Comptroller to draw his
warrant in favor of the Treasurer of each such
county, city or town or school district for the
amount stated in such certificate. He shall re-
ceive from the State Treasurer all warrants so
drawn, and shall transmit such warrants to the
respective treasurer in favor of whom they are
drawn."

The term "treasurer" as used in Article 2663, supra,
clearly means "county depository." See Article 2828, supra.

This department held in an opinion written by Hon.
Scott Gaines, Assistant Attorney General, dated June 9, 1931,
addressed to Mr. S.M.N. Marrs, State Superintendent, that a
county depository being selected, bond furnished under Article
2829 and approved, said bank as selected becomes the depository
for all school funds of said county, including State and county
available school fund and permanent county school fund. This
opinion held further that the custody of bonds and other se-
curities as investments of permanent school fund will be with
county treasurer and that such responsibility was covered by
the county treasurer's general bond.

We call your attention to the following language,
found in the footnotes under Article 2828, Vernon's Annotated
Texas Civil Statutes, Vol. 8, page 298, to-wit:

"Under Const. Art. 16, ◊ 44, providing that
the Legislature shall prescribe the duties of the
county treasurer, who shall have such compensa-
tion as may be provided by law, the Legislature,
notwithstanding this article, had power to pass
Act 31st Legislature, c. 12, transferring the cus-
tody of such funds to the county depositories,
thus relieving the county treasurers of any li-
ability for such funds so deposited.... Citing
Horton vs. Rockwall County, (Civ. App) 149 SW
297." (Underlining ours)

The case of Horton vs. Rockwall County, Supra, holds
that the county treasurer is not entitled to a commission for
receiving and disbursing school funds. The following language
of the court in that case, pertinent to your inquiry, is call-
ed to your attention, to-wit:

"Pursuing this policy and for the purpose
of further conserving and increasing the school
funds particularly, the amendment to the public
free school laws was passed, by which the manage-
ment and control of the district schools were
placed squarely in the hands of the school trus-
tees, including the disbursement of all funds
raised by the issuance of bonds for the purchase
of sites and the building of schools, with the
additional provision that on funds raised for
such school purposes no commission should be paid
for receiving and disbursing same for the obvious
reason that since the safety of the fund was se-
cured by the depository, and the labor and duty of
disbursing it rested with the school trustees, it
would be a needless expense and but curtail the
school fund to pay an officer for receiving and
disbursing same, when he was charged neither with
its safe-keeping nor liable for its loss or mis-
appropriation."    (Underlining ours)

The case of Baxter, County Treasurer, vs. Rusk County,
11 SW 2nd 648, follows and supports the case of Horton vs.
Rockwall County, supra.

You are therefore respectfully advised that it is the
opinion of this department that the county treasurer is not
liable under the treasurer's official bond for shortages in
school funds over which the treasurer exercised no control and
which have been legally and properly deposited in the duly
authorized and  properly bonded county depository, in the absence
of official misconduct or negligence on the part of the trea-
surer and in the absence of any misappropriation of such funds
by the treasurer.  The complete facts in each case will deter-
mine the liability in each case.

We are not furnished with enough facts relative to the
matter of defects or worthlessness of the bonds and surround-
ing facts to pass upon the question of the liability of the
treasurer, if any, in those matters.

With reference to your second question, we assume that
by the term "public school funds" you refer to the investment
of the permanent county school fund.

Section 6, Article VII, Texas Constitution, reads as
follows:

"All lands heretofore, or hereafter granted
to the several counties of this State for educa-

tional purposes, are of right the property of said counties respectively, to which they were granted, and title thereto is vested in said counties, and no adverse possession or limitation shall ever be available against the title of any county. Each county may sell or dispose of its lands in whole or in part, in manner to be provided by the Commissioners' Court of the county. Actual settlers residing on said lands, shall be protected in the prior right of purchasing the same to the extent of their settlement, not to exceed one hundred and sixty acres, at the price fixed by said court, which price shall not include the value of existing improvements made thereon by such settlers. Said lands, and the proceeds thereof, when sold, shall be held by said counties alone as a trust for the benefit of public schools therein; said proceeds to be invested in bonds of the United States, the State of Texas, or counties in said State, or in such other securities, and under such restrictions as may be prescribed by law; and the counties shall be responsible for all investments; the interest thereon, and other revenue, except the principal shall be available fund."

Article 2824, Vernon's Annotated Civil Statutes of Texas, reads as follows:

"Each county may sell or dispose of the lands granted to it for educational purposes in such manner as may be provided by the commissioners court of such county, and the proceeds of any such sale shall be invested in bonds of the United States, the State of Texas, the bonds of the counties of the State, and the independent or common school districts, road precinct, drainage, irrigation, navigation and levee districts in this State, and the bonds of incorporated cities and towns, and held by such county alone as a trust for the benefit of public free schools therein, only the interest thereon to be used and expended annually."

The case of Boydstun vs. Rockwall County, 24 SW 272, holds among other things, that it is the duty of the commissioner's court to invest the county permanent school fund. This case also holds that the commissioners court may ratify an act of a county judge who without authority purchases bonds with the school funds.

This department has repeatedly held that the power and duty to invest the county permanent school fund is in the commissioners' court.

Your second question is therefore answered in the negative.

Very truly yours

ATTORNEY GENERAL OF TEXAS

By   s/Wm. J. Fanning
Wm. J. Fanning
Assistant

WJF:AW:wc

APPROVED JUNE 7, 1940
s/Grover Sellers
FIRST ASSISTANT
ATTORNEY GENERAL

Approved Opinion Committee By s/BWB Chairman